# UNITED STATES COURT OF APPEALS

## FOR THE EIGHTH CIRCUIT

———————————

### No. 14-3534

———————————

**CLAYTON WALKER,**

      **Appellant,**

**v.**

**JASON GANT, Secretary of State and MARTY JACKLEY, Attorney General,**

      **Appellees.**

———————————

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH DAKOTA, WESTERN DIVISION

———————————

## THE HONORABLE LAWRENCE L. PIERSOL
### United States District Court Judge

———————————

## APPELLEE'S BRIEF

———————————

**MARTY J. JACKLEY
ATTORNEY GENERAL**

**Richard M. Williams
Assistant Attorney General
1302 E. Highway 14, Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215**

**Attorneys for Appellee**

**SUMMARY OF THE CASE AND STATEMENT REGARDING ORAL ARGUMENT**

In order to appear on the General Election ballot in 2014 as an independent candidate for United States Senate, a candidate was required to file a nominating petition containing 3,171 valid signatures on or before April 29, 2014.  SDCL 12-7-1.  Walker failed to file a nominating petition containing the requisite number of signatures at any time prior to the General Election and thus, could not appear on the November General Election ballot.  The District Court found South Dakota's ballot access provisions are reasonable nondiscriminatory requirements justified by the State's compelling interest in maintaining the integrity of the political process.  The requirements place independent and Party candidates in relative parity with regard to ballot access.  Accordingly, the Court properly granted Defendants' Motion to Dismiss and denied the injunctive relief requested by Walker.  Defendants respectfully maintain oral argument is unnecessary.  The Court did not err as a matter of law and Summary Disposition under 8th Cir. R. 47(A) or Affirmance Without Opinion under 8th Cir. R. 47(B) is urged by Defendants.

i

# TABLE OF CONTENTS

<u>PAGE</u>

SUMMARY OF THE CASE AND STATEMENT WITH
  REGARD TO ORAL ARGUMENT ...................................................i

TABLE OF AUTHORITIES ............................................................iii

JURISDICTIONAL STATEMENT ....................................................1

STATEMENT OF ISSUE ................................................................2

STATEMENT OF THE CASE AND FACTS ......................................2

SUMMARY OF ARGUMENT ..........................................................5

STANDARD OF REVIEW ...............................................................6

ARGUMENT

> *The district court properly granted Defendants' Motion*
> *to Dismiss and denied Walker's injunctive relief*
> *regarding South Dakota's ballot access requirements*
> *for independent candidates.* ...................................................8

   A.   The district court properly granted Defendants'
       Motion to Dismiss. .........................................................8

   B.   The district court properly denied Walker's request
       for injunctive relief because Walker failed to collect
       enough signatures prior to the general election. ...........26

CONCLUSION............................................................................28

CERTIFICATE OF COMPLIANCE.................................................29

CERTIFICATE OF SERVICE.........................................................30

Appellate Case: 14-3534     Page: 3     Date Filed: 02/20/2015 Entry ID: 4246618

# TABLE OF AUTHORITIES

PAGE

FEDERAL CASES CITED:

*American Party of Texas v. White,* 415 U.S. 767,
94 S.Ct. 1296, 39 L.Ed.2d 744 (1974) ............................. 2, 20, 24

*Anderson v. Celebreze*, 460 U.S. 789, 103 S.Ct. 1564,
75 L.Ed.2d 547 (1983) ........................................................ 21, 22

*Burdick v. Takushi,* 504 U.S. 428, 112 S.Ct. 2059,
119 L.Ed.2d 245 (1992) ..................................................... 8, 9, 24

*Clements v. Fashing*, 457 U.S. 957, 102 S.Ct. 2836,
73 L.Ed.2d 508 (1982) ........................................................ 24, 25

*Constitution Party of S.D. v. Nelson*, 730 F. Supp. 2d 992
(D.S.D. 2010) ...................................................................... 20, 22

*Detroit General Retirement System v. Medtronic, Inc.*,
621 F.3d 800 (8th Cir. 2010) ........................................................ 6

*Fitz v. Dolyak*, 712 F.2d 330 (8th Cir. 1983) .................................. 7

*Green Party of Arkansas v. Martin*, 649 F.3d 675 (2011) .. 10, 17, 22

*Jenness v. Fortson*, 403 U.S. 431, 91 S.Ct. 1970,
29 L.Ed. 2d 554 (1971) ...................................................... passim

*Lawrence v. Blackwell*, 430 F.3d 368 (6th Cir. 2005) ............ 10, 20

*Libertarian Party of North Dakota v. Jaeger*,
659 F.3d 687 (8th Cir. 2011) .............................................. passim

*Manifold v. Blunt*, 863 F.2d 1368 (8th Cir. 1988) ......................... 10

*McLain v. Meier*, 851 F.2d 1045 (8th Cir. 1988) ........... 9, 19, 22, 26

Appellate Case: 14-3534    Page: 4    Date Filed: 02/20/2015 Entry ID: 4246618

*Nader 2000 Primary Committee, Inc. v. Hazeltine*,
226 F.3d 979 (8th Cir. 2000) ..............................................passim

*O'Neil v. Simplicity, Inc.*, 574 F.3d 501 (8th Cir. 2009)..................6

*Onyiah v. St. Cloud State University,* 655 F. Supp. 2d 948
(D. Minn. 2009) ..........................................................................7

*Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077 (8th Cir. 1999)....7

*Storer v. Brown*, 415 U.S. 724, 94 S.Ct. 1274,
39 L.Ed.2d 714 (1974) ....................................................9, 22, 28

*Timmons v. Twin Cities Area New Party,* 520 U.S. 351,
117 S.Ct. 1364, 137 L.Ed.2d 589 (1997)....................................8

*United States ex rel. Kraxberger v. Kansas City Power
and Light Co.*, 756 F.3d 1075 (8th Cir. 2014) ..............................7

*United States v. Eagleboy*, 200 F.3d 1137 (8th Cir. 1999)..............7

*Williamson v. Lee Optical Co.,* 348 U.S. 483, 75 S.Ct. 461,
99 L.Ed. 563 (1955) ...................................................................25

*Wood v. Meadows*, 207 F.3d 708 (4th Cir. 2000)...................10, 20

FEDERAL STATUTES CITED:

28 U.S.C. § 1291 ...........................................................................1

28 U.S.C. § 1331 ...........................................................................1

STATE STATUTES CITED:

SDCL 12-1-3(10)..........................................................................12

SDCL 12-1-13 ...............................................................................3

SDCL 12-1-14................................................................................3

iv

SDCL 12-5-1 .................................................................. 11, 12

SDCL 12-5-1.4.............................................................. 13

SDCL 12-5-21.............................................................. 12

SDCL 12-6-3.2.............................................................. 11

SDCL 12-6-4 ............................................................ 11, 12, 16

SDCL 12-6-7 .............................................................. 13

SDCL 12-6-8 ............................................................ 11, 15

SDCL 12-6-50.............................................................. 13, 14

SDCL 12-6-51.1............................................................ 13

SDCL 12-7-1 .......................................................... passim

SDCL 12-7-7 .............................................................. 21

SDCL 12-19-1.2.......................................................... 27

OTHER REFERENCES:

Fed. R. Civ. P. 12(b)(6) ................................................ 6

Fed. R. Evid. 201 ........................................................ 8

Appellate Case: 14-3534    Page: 6    Date Filed: 02/20/2015 Entry ID: 4246618

# JURISDICTIONAL STATEMENT

This matter arises from an Order and Judgment granting Defendants' Motion to Dismiss and denying Walker's request for injunctive relief filed by the Honorable Lawrence L. Piersol, United States District Court Judge, District of South Dakota, Western Division on October 31, 2014.  *Walker v. Jason Gant, et al.*, 5:14-cv-05062-LLP, Docs.  27-28.[1]  Walker's Complaint (Doc. 1) and request for injunctive relief (Doc. 23) raised First and Fourteenth Amendment claims arising under the United States Constitution. 28 U.S.C. § 1331.  Walker timely filed an Amended Notice of Appeal on November 6, 2014.  Doc. 31.  This Court has jurisdiction under 28 U.S.C. § 1291 which provides the United

---

[1] Throughout this brief Appellant Clayton Walker will be referred to as "Walker."  Appellees South Dakota Secretary of State Jason Gant and South Dakota Attorney General Marty Jackley will be designated "Defendants."  Because this appeal was initiated by a *pro se* appellant, 8th Cir. R. 30A(a)(2) caused the exhibits to be submitted to this Court and thus no separate appendix of exhibits was required.  Accordingly, citations to the exhibits entered at the District Court level in *Walker v. Jason Gant, et al.*, 5:14-cv-05062-LLP will be cited according to the docket and exhibit number issued below.  Citations to the transcript of the hearing held on October 31, 2014, will be identified as "TR."

1

States Court of Appeals has appellate jurisdiction over final decisions of United States District Courts.

## STATEMENT OF ISSUE

Whether the District Court properly granted Defendants' Motion to Dismiss and denied Walker's request for injunctive relief.

*American Party of Texas v. White,* 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974)

*Jenness v. Fortson,* 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed. 2d 554 (1971)

*Libertarian Party of North Dakota v. Jaeger,* 659 F.3d 687 (8th Cir. 2011)

*Nader 2000 Primary Committee, Inc. v. Hazeltine,* 226 F.3d 979 (8th Cir. 2000)

## STATEMENT OF THE CASE AND FACTS

On April 29, 2014, Walker filed a nominating petition with the South Dakota Secretary of State seeking recognition as an independent candidate for the United States Senate. Doc. 16-1 (Exhibit A). Pursuant to SDCL 12-7-1, independent candidates for state-wide office are required to submit a nominating petition containing a number of signatures not less than ". . . one percent of the total combined vote cast for Governor at the last certified gubernatorial election . . ." For the 2014 election cycle, therefore,

2

Walker was required to file a nominating petition containing at least 3,171 valid signatures from across the state. Doc. 16-1 (Exhibit A); Doc. 16-3 (Exhibit C). Walker's nominating petition contained 3,374 completed signature lines and was initially approved for filing. Doc. 16-1 (Exhibit A).

On May 8, 2014, the Secretary of State received a challenge to Walker's nominating petition. *Id. See also* SDCL 12-1-13 (allowing challenges to nominating petitions). The challenge alleged 1,834 signature lines of Walker's nominating petition were invalid. Pursuant to SDCL 12-1-13 and 12-1-14, the Secretary of State's Office conducted an additional review. *See* Doc. 16-1 (Exhibit A). Based on the review, it was determined that 1,613 of the 1,834 challenged lines were invalid. *Id.* After striking the invalid lines, the nominating petition contained only 1,761 signatures. The petition fell 1,410 signatures short of the 3,171 signatures required for Walker to qualify as a candidate. As a result, Walker's nominating petition for United States Senate was rejected and his name was not placed on the ballot for the November 4, 2014 General Election. *Id.* At no time after this determination did Walker file any additional signatures. Given

3

discrepancies found in Walker's nominating petition, the matter was referred to the Division of Criminal Investigation.

Walker initially filed a state court appeal of the Secretary of State's decision on May 27, 2014. *In the Matter of the Appeal from the Secretary of State's Rejection of the Nominating Petition filed by Clayton Walker*, Hughes County Civ. No. 14-113. That appeal was dismissed by the Honorable Judge Mark Barnett on June 12, 2014, because the Court lacked jurisdiction to hear a direct appeal from the Secretary of State's ruling. *Id.*

On August 11, 2014, Walker attempted to appeal Judge Barnett's decision to the South Dakota Supreme Court. On August 18, 2014, the South Dakota Supreme Court dismissed Walker's appeal because it was not timely filed. *In the Matter of the Appeal from the Secretary of State's Rejection of the Nominating Petition filed by Clayton Walker*, Appeal 27169.

On September 26, 2014, Walker filed a Complaint in United States District Court, District of South Dakota, Western Division. 5:14-cv-05062-LLP. Doc. 1. Walker alleged South Dakota's ballot access requirements violate the First and Fourteenth Amendments to the United States Constitution and requested he be placed on

4

the November General Election ballot.  Doc. 1; Doc. 23.  Given the short timeframe before the election, the Court expedited the briefing process.  Doc. 10.  On October 21, 2014, Defendants responded to Walker's request for injunctive relief and moved to dismiss.  Docs. 15-16.  Testimony was taken and oral argument was heard on October 31, 2014.  Doc. 25.  After reviewing the briefs and considering the arguments, the Honorable Lawrence L. Piersol denied Walker's request for injunctive relief and granted Defendants' Motion to Dismiss.  Docs. 27-28.  Walker timely filed his Amended Notice of Appeal on November 11, 2014.  Doc. 31.

## SUMMARY OF ARGUMENT

The District Court properly granted Defendants' Motion to Dismiss and denied Walker's request to have his name placed on the November 4, 2014 General Election ballot as an independent candidate for the United States Senate.  Walker's argument that South Dakota's filing deadline for independent candidates is too early and the number of signatures required is too high is not supported by controlling law.  Independent candidates are not frozen out of the political process by South Dakota's ballot access requirements.  Instead, South Dakota's process places only

5

reasonable nondiscriminatory restrictions on ballot access which allow diligent independent candidates to appear on South Dakota's ballots. The burdens of ballot access are born in substantially equal measure by independent and party candidates and do not violate Walker's right to equal protection. Additionally, Walker's failure to submit the requisite number of signatures at any time prior to the General Election precludes the issuance of the injunctive relief requested by Walker.

## STANDARD OF REVIEW

Dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is reviewed *de novo*. *Libertarian Party of North Dakota v. Jaeger*, 659 F.3d 687, 692-93 (8th Cir. 2011) (*citing Detroit General Retirement System v. Medtronic, Inc.*, 621 F.3d 800, 804 (8th Cir. 2010). "In reviewing a dismissal, [the court] accept[s] factual allegations of the complaint as true, but the allegations must supply sufficient 'facts to state a claim to relief that is plausible on its face.'" *Id.* at 693 (*citing O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 503 (8th Cir. 2009)). Additionally, Walker's challenge seeks to invalidate ballot access provisions implemented by the State of South Dakota, "Since a presumption of constitutionality attaches

6

to state legislative enactments, a party seeking to challenge a statute under this standard bears a heavy burden." *Fitz v. Dolyak*, 712 F.2d 330, 333 (8th Cir. 1983).

Furthermore, when entertaining a motion to dismiss, the Court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" without converting the matter to a summary judgment. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citations and internal quotations omitted); *see also United States ex rel. Kraxberger v. Kansas City Power and Light Co.*, 756 F.3d 1075, 1083 (8th Cir. 2014) (providing in a motion to dismiss, a court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record"); *Onyiah v. St. Cloud State University,* 655 F. Supp. 2d 948, 960 (D. Minn. 2009). Public documents and agency documents are subject to judicial notice and may be considered on a motion to dismiss. *United States v. Eagleboy*, 200 F.3d 1137, 1140 (8th Cir. 1999). Defendants' Exhibits are matters of public record and agency documents - their actual contents are not subject to reasonable dispute and capable of judicial notice under

Appellate Case: 14-3534     Page: 13     Date Filed: 02/20/2015 Entry ID: 4246618

Fed. R. Evid. 201. Accordingly, Defendant's Exhibits were appropriately considered by the District Court.

## ARGUMENT

*The District Court properly granted Defendants' Motion to Dismiss and denied Walker's injunctive relief regarding South Dakota's ballot access requirements for independent candidates*

A.    *The District Court properly granted Defendants' Motion to Dismiss.*

"Voting is of the most fundamental significance under our constitutional structure." *Burdick v. Takushi*, 504 U.S. 428, 433, 112 S.Ct. 2059, 2063, 119 L.Ed.2d 245 (1992) (citations omitted). "It does not follow, however, that the right to vote in any manner and the right to associate for political purposes through the ballot are absolute." *Id.* States "may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons v. Twin Cities Area New Party,* 520 U.S. 351, 358, 117 S.Ct. 1364, 1369, 137 L.Ed.2d 589 (1997) (*citing Burdick*, 504 U.S. at 433, 112 S.Ct. at 2063). The "State has an interest, if not a duty, to protect the integrity of its political processes from frivolous or fraudulent

8

candidacies." *Storer v. Brown*, 415 U.S. 724, 733, 94 S.Ct. 1274, 1280, 39 L.Ed.2d 714 (1974) (quoting *Jenness v. Fortson*, 403 U.S. at 442, 91 S.Ct. at 1976). Thus, First and Fourteenth Amendment challenges to ballot access restrictions are reviewed based on the quality of the burden:

> when those rights are subjected to "severe" restrictions, the regulation must be "narrowly drawn to advance a state interest of compelling importance." But when a state election law imposes only "reasonable, nondiscriminatory restrictions" upon the First and Fourteenth Amendment rights of voters, "the State's important regulatory interests are generally sufficient to justify" the restrictions.

*Burdick*, 504 U.S. at 434, 112 S.Ct. at 2063 (citations omitted).

In determining the level of review, the Court must first determine whether the challenged laws "'freeze' the status quo by effectively barring all candidates other than major parties," or "could a reasonably diligent candidate be expected to satisfy the requirements." *McLain v. Meier*, 851 F.2d 1045, 1050 (8th Cir. 1988) (citations omitted). If diligent candidates are able to meet the ballot access standards, the requirements are constitutional even if "necessarily arbitrary." *Libertarian Party of North Dakota*, 659 F.3d at 694 (quoting *McLain*, 851 F.2d at 1050). Once it has

9

been determined that the challenged ballot provisions afford "essential equal opportunity for ballot qualification," the "inquiry evolves from strict scrutiny into one of 'reasonableness: Do the challenged laws freeze the status quo by effectively barring all candidates other than those of major parties.' " *Libertarian Party of North Dakota,* 659 F.3d at 694; *see also Green Party of Arkansas v. Martin*, 649 F.3d 675, 680, 685-86 (2011) (strict scrutiny not applied when imposed burdens are not severe); *Lawrence v. Blackwell*, 430 F.3d 368, 375 (6th Cir. 2005), *cert. denied,* 547 U.S. 1178 (June 5, 2006) (strict scrutiny not applied); *Wood v. Meadows*, 207 F.3d 708, 716-17 (4th Cir. 2000) (strict scrutiny not applicable to reasonable, nondiscriminatory ballot access restrictions). Here, South Dakota's ballot access provisions are constitutional because they provide relative parity between Party and independent candidates allowing essentially equal access to the ballot. Further, South Dakota's requirements are a reasonable and rational means of implementing the State's important regulatory interests. *Manifold v. Blunt*, 863 F.2d 1368, 1374 (8th Cir. 1988).

10

Candidates in South Dakota may obtain access to the ballot either by running unaffiliated with a political party as an independent candidate or as a member of an officially recognized political party. Independent candidates for United States Senate need only file a nominating petition with the requisite number of signatures to appear on the November General Election Ballot. SDCL 12-7-1. Party candidates for United States Senate, on the other hand, must be registered voters with recognized political party affiliation and file a nominating petition with the requisite number of signatures. SDCL §§ 12-6-3.2, 12-6-4, 12-6-8. Party affiliation carries with it the burdens of establishing and maintaining political party status.

A new political party is formed and recognized by the State through the collection and filing of signatures amounting to "at least two and one-half percent of the voters of the state as shown by the total vote cast for Governor at the preceding gubernatorial election . . ." SDCL 12-5-1. In 2014, that formula resulted in the need for a new party to collect 7,500 valid signatures. *See* Doc. 16-3 (Exhibit C). In order for a new party to become a political party, the new party must run a gubernatorial candidate

Appellate Case: 14-3534    Page: 17    Date Filed: 02/20/2015 Entry ID: 4246618

in the next gubernatorial election and that candidate must receive
"at least two and one-half percent of the total votes cast for
Governor."  SDCL 12-5-1, 12-1-3(10).  If a new party's
gubernatorial candidate fails to receive two and one-half percent of
the vote, party status ends and the group has to refile as a new
party under SDCL 12-5-1.  Any established political party failing to
field a qualifying gubernatorial candidate at a general election also
loses party status.  SDCL 12-1-3(10).

New political parties and established political parties may
both nominate candidates for certain offices at the party's
convention.  SDCL 12-5-21.  Other offices require party candidates
to file nominating petitions with the Secretary of State's Office in
order to participate in that party's primary election.  SDCL 12-6-4.
The nominating petitions of political party members running for
Governor, United States Senate, and United States House of
Representatives must contain signatures of "not less than one
percent of the voters who cast their vote for *that party's
gubernatorial candidate* at the last gubernatorial election . . ."

12

SDCL 12-6-7 (emphasis added).[2]  In 2014, for example, Republican Party members running for the aforementioned offices were required to present at least 1,955 signatures on their nominating petitions and Democratic Party members 1,221.  Doc. 16-3 (Exhibit C).  The political party candidate receiving the highest number of votes as a result of the primary election process is declared the nominee of that party and appears on the general election ballot.  SDCL 12-6-50, 12-6-51.1.  As such, only one political party nominee continues on to the general election.

Unlike political party candidates, independent candidates are not first required to establish a political party by gathering signatures of 7,500 voters; nor are they required to maintain political party status by ensuring that they run a candidate for governor and that candidate receive two and one-half percent of the vote at each gubernatorial election.  Furthermore, because they are not associated with a political party, independent

_____

[2] The number of signatures required on the petitions of new party nominees is governed by SDCL 12-5-1.4.  Pursuant to SDCL 12-5-1.4, new party nominees for statewide office must gather 250 signatures from members of their party.  For the purposes of this argument, the requirements of established political parties and those of independent candidates are compared.

13

candidates are not required to expend time and money to run in a primary election. Rather, an independent candidate illustrates the significant modicum of support necessary to be placed on general election ballot simply by circulating a nominating petition. SDCL 12-7-1.

The number of signatures on a nominating petition for an independent candidate "may not be less than *one percent of the total combined vote* case for Governor at the last certified gubernatorial election. . ." SDCL 12-7-1 (emphasis added). For 2014, an independent candidate's nominating petition for the offices described above was required to contain 3,171 signatures. Doc. 16-3 (Exhibit C). Because there is no primary election for independent candidates, multiple independent candidates may appear on the general election ballot for the same office. *See* SDCL 12-6-50 (political party candidates limited to candidate receiving the highest number of votes cast at the primary election); Doc. 16-5 (Exhibit E) (candidate list containing two independent candidates for United States Senate).

Walker argues that South Dakota impermissibly requires independent candidates to gather more signatures than political

Appellate Case: 14-3534     Page: 20     Date Filed: 02/20/2015 Entry ID: 4246618

party candidates in order to secure a place on the ballot. A simple glance at the signature numbers required for nominating petitions overlooks a political party's burden in creating and maintaining a political party, the requirement of expending time and money for a primary election, and the fact that, for any given office, only one political party member continues on to the general election. As described above, independent candidates carry none of these burdens and several independent candidates for the same office may appear on the general election ballot.

Moreover, once the numbers themselves are analyzed within the appropriate framework, it becomes apparent that the burden of collecting signatures as an independent candidate is no greater than that of an established political party member. Political party candidates are restricted to collecting petition signatures from only members of their own political party. SDCL 12-6-8 (providing that no person may sign a petition for a political party for which he is not a member). Independent candidates, however, may collect signatures from any registered voter regardless of party affiliation. SDCL 12-6-8 (stating that the provisions of this section do not prohibit a person with party affiliation from signing an

15

independent candidate's nominating petition); SDCL 12-7-1 (allowing "registered voters" to sign the petition).

Independent candidates also have a longer period in which to collect the required signatures. Both party and independent candidates may begin gathering signatures on January 1. SDCL 12-6-4 and 12-7-1. Party candidates have a submission deadline of "the last Tuesday in March." SDCL 12-6-4. Independent candidates may continue to circulate their petition until the "last Tuesday in April." SDCL 12-7-1. For the 2014 election cycle, party candidates had until March 25 to circulate nominating petitions and independents had until April 29. This gave party candidates eighty-three days to circulate their nominating petition and independent candidates 118 days. Independent candidates received, therefore, an additional thirty-five days to circulate a nominating petition. As represented as signatures per day, Republican Party candidates, having to collect 1,995 signatures in eighty-three days, were required to collect twenty-four signatures per day. Democratic candidates, with a 1,221 signature requirement, had to collect fifteen signatures per day.

Appellate Case: 14-3534    Page: 22    Date Filed: 02/20/2015 Entry ID: 4246618

Independents, collecting 3,171 signatures over 118 days had to collect twenty-seven signatures per day.

Admittedly, based on the above calculations, Independent candidates were required to collect three signatures per day more than their Republican counterparts and twelve more signatures per day than a Democratic candidate. As noted above, however, party candidates may only collect signatures from members of their own party. Independent candidates may gather signatures from all registered voters on a statewide basis—there are no county or precinct restrictions—and they have an additional thirty-five days to do so. Party candidates signing an independent's petition are not prohibited from voting in their own party primary or general election. *Green Party of Arkansas*, 649 F.3d at 684 (noting ability for any registered voter to sign a petition and participate in another party's primary illustrates a lesser burden). Independents, therefore, have a much larger pool to draw from and thus, a greater likelihood of finding an eligible voter to sign the candidate's petition. *Libertarian Party of North Dakota*, 659 F.3d at 696 (defining eligible pool as the number of individuals eligible to act).

17

Appellate Case: 14-3534    Page: 23    Date Filed: 02/20/2015 Entry ID: 4246618

For example, as of May 1, 2014, two days after independent petitions were due, Republicans had 235,838 registered voters, Democrats, 175,942 and total voter registration was 509,629. Doc. 16-4 (Exhibit D). This means, on a given day, the twenty-four signatures that a Republican candidate had to gather was 0.01% of their total pool of eligible voters, a Democratic candidate's fifteen signatures placed them at 0.009% and twenty-seven signatures for Independents placed them at 0.005% of their pool of eligible voters. Said another way, on an available circulation day, *Independents were twice as likely* as Republican or Democratic candidates to find an individual eligible to sign their nominating petition.

This Court specifically addressed South Dakota's one-percent signature requirement for independent candidates in *Nader 2000 Primary Committee, Inc. v. Hazeltine,* 226 F.3d 979 (8th Cir. 2000). In rejecting Nader's attempt to be placed on the General Election ballot, this Court wrote:

> Plaintiffs do not challenge the constitutionality of South Dakota's once-percent ballot-access requirement, and rightfully so. The State has the undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the

Appellate Case: 14-3534    Page: 24    Date Filed: 02/20/2015 Entry ID: 4246618

> ballot, because it is both wasteful and confusing to
> encumber the ballot with the names of frivolous
> candidates.'. . . In these circumstances, we deny the
> motion for an injunction placing Nader and his running
> mate on the South Dakota ballot because *that relief*
> *would improperly excuse these candidates from the*
> *constitutionally valid one-percent requirement.*

*Nader 2000 Primary Committee, Inc.,* 226 F.3d at 980-981(citations

omitted) (emphasis added).

Additionally, numerical signature requirements equal to or

greater to South Dakota's are upheld even when required relatively

early in in the election year.[3]  In *McLain v. Meier,* 851 F.2d 1045

(8th Cir. 1998), this Court upheld a 7,000 signature requirement,

for third party candidates, due fifty-five days before the June

primary.  *McLain*, 851 F.2d at 1051 (equal to 127 signatures per

day).  In *Jenness v. Fortson*, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.

2d 554 (1971), pursuant to an equal protection challenge, the

---

[3] According to the Federal Election Commission, for the 2014
congressional election cycle, eight states, including Arkansas in
the 8th Circuit, have independent filing deadlines for the General
Election earlier than South Dakota's deadline of April 29.
http://www.fec.gov/pubrec/fe2014/2014pdates.pdf.  Six of those
states require Party and independent candidates to file on the
same day.  *Id.*  The two remaining states, Florida and Nevada
require independent candidates to file before party candidates.  *Id.*
Fifteen additional states have filing deadlines for independent
candidates in May or June.

Supreme Court upheld the state's requirements requiring a nonparty candidate to file a nominating petition containing five percent of the number of registered voters on the "second Wednesday in June, the same deadline that a candidate filing in a party primary must meet." *Jenness*, 403 U.S. at 433-34, 91 S.Ct. at 1971-72. Following *Jenness*, the Supreme Court in *American Party of Texas v. White*, 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974), upheld the condition that small party candidates file a petition with at least the number of electors "equal in number to 1% of the vote for governor in the last general election" over the course of fifty-five days. *American Party of Texas*, 415 U.S. at 782-83, 94 S.Ct. at 1306-07 (the requirement amounted to the gathering of 22,000 signatures over fifty-five days or 400 signatures per day); *see also, Lawrence v. Blackwell*, 430 F.3d 368 (upholding a one-percent requirement for nominating petitions before a primary election held in either March or May)); *Wood*, 207 F.3d. at 716-17 (upholding 10,000 signature requirement with 400 from each congressional district on the second Tuesday in June for independent and Party candidates). South Dakota's requirements

Appellate Case: 14-3534    Page: 26    Date Filed: 02/20/2015 Entry ID: 4246618

are less burdensome than those previously upheld by both the United States Supreme Court and Federal Circuit Courts.

The Court's conclusion in *Nader 2000 Primary Committee, Inc.* that South Dakota's one percent requirement is constitutional is not altered by the April filing deadline for independent candidates in non-presidential campaigns.[4] *Nader 2000 Primary Committee, Inc.* at 980-81. In *Anderson v. Celebreze*, 460 U.S. 789, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), the Court struck a state ballot access requirement in which independent candidates for the office of President of the United States were required to file nominating petitions containing 14,500 signatures *five months prior* to the nominations of party candidates. *Anderson*, 460 U.S. at 790-91, 103 S.Ct. at 1570-71 (emphasis added). The Court's concern focused on the "early" filing requirements for a Presidential election which carries with it "a uniquely important national

---

[4] In 2001, the South Dakota Legislature enacted SDCL 12-7-7 which places the nomination deadline for independent candidates for President and Vice President at "the First Tuesday in August" thus remedying the constitutional issue identified in *Nader 2000 Primary Committee, Inc.,* 226 F.3d 979 (8th Cir. 2000).

21

interest" having impact "beyond the State's boundaries." *Anderson*, 460 U.S. at 794-95, 103 S.Ct. 1564, 1573.

Here, because independent candidates do not have to file until nearly one month *after* party candidates the filing deadline is not "*early*" as described by *Anderson.  Lawrence*, 430 F.3d at 373 (describing "early" in *Anderson* as relative to other parties); *see also Constitution Party of S.D. v. Nelson*, 730 F. Supp. 2d 992, 1007-08 (D.S.D. 2010) (reversed in part on other grounds). Moreover, South Dakota's ballot access requirements at issue do not apply to the "uniquely important national interest" of a Presidential election.  *Anderson*, 460 U.S. at 794-95, 103 S.Ct. at 1573.  Thus, neither of the concerns expressed in *Anderson* are applicable to the facts before this Court.

Furthermore, South Dakota's provisions do not operate in concert to freeze the status quo by effectively barring independent candidates from the ballot.  *McLain*, 851 F.2d at 1050.  Instead, the ability of independent candidates to access the ballot provides evidence of the reasonableness of South Dakota's requirements. *Green Party of Arkansas*, 649 F.3d at 684 (*citing Storer*, 415 U.S. at 742, 94 S.Ct. at 1274).  The candidate list for 2014 illustrates the

22

ability of an independent candidate to appear on the general election ballot. Doc. 16-5 (Exhibit E). As shown on the list, there were four candidates for United States Senator, two of which—Gordon Howie and Larry Pressler—ran as independent candidates. The other two represented the Democratic and Republican parties. For Governor, there were three candidates, two of which represented the Democratic and Republican parties and one independent – Michael J. Myers.

Rather than being hindered or discriminated against by the party system, independent candidates on this list may actually be appearing on the general election ballot as a result of *not* being affiliated with a political party. They are relieved of many of the burdens described above. Additionally, South Dakota allows multiple independent candidates vying for the same elected office to appear on the general election ballot—a luxury no party candidate has. The State's important regulatory interests including protecting the integrity of its political process from frivolous or fraudulent candidates, requiring candidates to show a significant modicum of support before placing them on the ballot and maintaining relative parity between party and non-affiliated

23

candidates is sufficient to justify the minor and reasonable ballot restrictions placed on both party and independent candidates. *Burdick*, 504 U.S. at 434, 112 S.Ct. at 2063 (citations omitted).

Based on the arguments above, a claim based on equal protection fares no better. The Supreme Court has held that "[i]n making an equal protection challenge, it is the claimant's burden to 'demonstrate in the first instance a discrimination against [him] of some substance.'" *Clements v. Fashing*, 457 U.S. 957, 967, 102 S.Ct. 2836, 2845, 73 L.Ed.2d 508 (1982) (quoting *American Party of Texas*, 415 U.S. at 781, 94 S.Ct. at 1306). "The Court must consider whether the burden Plaintiff is unreasonable and whether the burden was outweighed by the State's interest in, among other things, avoiding ballot clutter and ensuring viable candidates." *Constitution Party of S.D.,* 730 F. Supp. 2d at 1006 (citing *Jenness,* 403 U.S. at 442, 91 S.Ct. at 1970). Although independents and Party candidates have different avenues for ballot access, the requirements for independents do not violate the Equal Protection Clause. "Classification is the essence of all legislation, and only those classifications which are invidious, arbitrary, or irrational offend the Equal Protection Clause of the Constitution." *Clements*,

24

457 U.S. at 967, 102 S.Ct. at 2846 (citing *Williamson v. Lee Optical Co.,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955)).

As the Supreme Court noted,

> [t]he fact is that there are obvious differences in kind between the needs and potentials of a political party with historically established broad support, on the one hand, and a new or small political organization on the other. [A State] has not been guilty of invidious discrimination in recognizing these differences and providing different routes to the printed ballot. Sometimes the grossest discrimination can lie in treating things that are different as though they were exactly alike[.]

*Jenness,* 403 U.S. at 441-42. Walker has not shown "a discrimination against [him] of some substance." *See Clements*, 457 U.S. at 967, 102 S.Ct. at 2845 (citations omitted). Neither has Walker demonstrated that the requirements for independent candidates are based upon a classification that is "invidious, arbitrary, or irrational." *Clements*, 457 U.S. at 967, 102 S.Ct. at 2846. The very nature of the differences between independent and party candidates, as described above, preclude the use of identical methods of achieving ballot access. Rather than freezing the status quo of a two-party system, South Dakota's provisions allow diligent independent candidates meaningful and essentially equal

25

access to the ballot. *McLain*, 851 F.2d at 1050 (citations omitted). Accordingly, South Dakota's ballot access provisions are constitutional and the District Court properly granted Defendants' Motion to Dismiss and denied Walker's request to be placed on the November General Election ballot.

B.     *The district court properly denied Walker's request for injunctive relief because Walker failed to collect enough signatures prior to the general election.*

Notwithstanding the constitutional analysis above, Walker's request to be placed on the 2014 General Election ballot fails. In order to appear on the 2014 General Election ballot, South Dakota required an independent candidate for the United States Senate to submit a nominating petition containing at least 3,171 valid signatures. SDCL 12-7-1. At no time before the general election did Walker file a nominating petition containing the requisite number of signatures. In accordance with *Nader 2000 Primary Committee, Inc.*, the failure to submit requisite number of signatures precludes Walker's name from being printed on the ballot. The injunctive relief requested by Walker cannot be granted because a candidate will not be excused from filing a petition in accordance with South Dakota's "constitutionally valid one-percent

26

requirement." *Nader 2000 Primary Committee, Inc.,* 226 F.3d. at 981.

Moreover, the granting of the relief requested by Walker would have disrupted the State's election process. Despite being notified by letter dated May 20, 2014, that his name would not be placed on the General Election Ballot, Walker waited until September 26, 2014, to file his Complaint in Federal District Court. Doc. 16-1 (Exhibit A); Doc. 1. Pursuant to SDCL 12-19-1.2, absentee voting began on Friday, September 19, forty-six days prior to the general election. As a result, Walker's Complaint was filed after the beginning of absentee voting. By October 16, 2014, 18,936 absentee ballots had been sent to South Dakota voters. Doc. 16-6 (Exhibit F). As of the same date, 13,517 ballots had been returned voted. *Id.* By the time the expedited hearing was held on October 31, 2014, over 40,000 absentee ballots had been cast. TR 31:4-7. Once cast, the ballots could not have reasonably been retrieved, amended, and re-voted. The requested relief would have jeopardized the First Amendment rights of South Dakota voters. *Nader 2000 Primary Committee, Inc.,* 226 F.3d at 980-81. It would also have improperly relieved

27

Walker from his obligation to show a significant modicum of support by conforming to South Dakota's petition requirements. *Id.* Such action would have been an unreasonable interference with the State's ability to protect the integrity of its political processes from frivolous or fraudulent candidacies. *Storer*, 415 U.S. at 733, 94 S.Ct. at 1280 (quoting *Jenness*, 403 U.S. at 442, 91 S.Ct. at 1976).

## CONCLUSION

Based on the above arguments and authorities, Defendants respectfully request this Court affirm the District Court's decision in all respects.

Respectfully submitted,

MARTY J. JACKLEY
ATTORNEY GENERAL

*/s/ Richard M. Williams*
Richard M. Williams
Assistant Attorney General
1302 E. Highway 14, Suite 1
Pierre, South Dakota 57501-8501
Telephone:  (605) 773-3215
Rich.Williams@state.sd.us

28

# CERTIFICATE OF COMPLIANCE

1.    I certify that the Appellee's Brief is within the limitation provided for in Rule 32(a)(7) using bookman old style typeface in 14 point type.  Appellee's Brief contains 4,760 words.

2.    I certify that the word processing software used to prepare this brief is Microsoft Word 2010, and it is herewith submitted in PDF format.

3.    I certify that the brief submitted herein has been scanned for viruses and that the brief is, to the best of my knowledge and belief, virus free.

Dated this 19th day of February, 2015.


*/s/  Richard M. Williams*
Richard M. Williams
Assistant Attorney General

Appellate Case: 14-3534    Page: 35    Date Filed: 02/20/2015 Entry ID: 4246618

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 19th day of February, 2015, a true and correct copy of Appellee's Brief was submitted to the Eighth Circuit Court of Appeals for review.

*/s/  Richard M. Williams*
Richard M. Williams
Assistant Attorney General

Appellate Case: 14-3534    Page: 36    Date Filed: 02/20/2015 Entry ID: 4246618